UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| MELVIN STEGER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 24-095-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| STEVEN WILLIS et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The matter is pending for consideration of Defendants Officer Steven Willis and Officer Mandie Appleman's motion for summary judgment concerning all claims asserted against them in this proceeding. [Record No. 33] Having fully considered the matter, summary judgment will be denied with respect to the claims asserted against Defendant Steven Willis but granted with respect to Plaintiff Melvin Steger's claims against Defendant Mandie Appleman.

**I. Background**

This case arises from an interaction occurring on August 24, 2023, between Steger and Covington Police Department Officers Willis and Appleman. [Record No. 33-1] At approximately 7:00 p.m., Covington Police Dispatch received a call from Stephanie Yung, Steger's next-door neighbor. [*Id*]. Yung reported that she had dropped her insulin pump on the street while loading her car earlier that day and that Steger had it but refused to return it to Yung. [*Id.*] Willis and Appleman were dispatched to Steger's home. [Record Nos. 33-2 and 33-3] Willis arrived at 7:05 p.m. and spoke with Yung and two other individuals. [Record

- 1 -

No. 33-2 at 19:05-19:08] Within a few minutes, Appleman arrived on scene and remained in the front yard as Willis approached Steger as he stood on his porch behind a closed iron rod gate at the top of the porch stairs. [Record Nos. 33-2 at 19:07 and 33-3 at 19:07] In response to Willis' questions, Steger acknowledged seeing the insulin pump and admitted to taking pictures of it but denied touching the device. [*Id.* at 19:08-19:09.] When asked he was accused of taking it, Steger responded that they were "liars" and that they were "lying" about this report. [*Id.* at 19:09-19:10.] And Steger's voice became louder as he spoke with Willis. [*Id.*] Willis then request that Steger just return the insulin pump, but Steger denied having it. [*Id.*]

During the conversation, Steger reached into a pocket with his right hand. [*Id.* at 19:10.] At this point, Willis and Appleman immediately warned the plaintiff keep his hands out of his pockets. [*Id.*] And Willis reported seeing what appeared to be a knife in Steger's pocket and specifically warned him not to pull it out. [*Id.*] Steger then removed a phone from his pocket and appeared to begin recording video of the parties' interaction. [*Id.*]

Willis asked Steger to produce identification, but Steger refused. [*Id.*] Instead, Steger told the defendants to obtain a warrant. [*Id.*] Steger's speech became louder as he demanded that the officers "get off my f*ckin property." [*Id.* at 19:11.] Willis asked Steger to refrain from using profanity. [*Id.*]

At approximately 7:12 p.m., and while still standing behind the gate on his porch, Steger responded, "f*ck you." [*Id.* at 19:12.] At that moment, and without any warning, Willis pushed the gate forward with both hands. [*Id.*] The gate struck Steger, with Willis immediately grabbing Steger's arm and shirt. [Record Nos. 33-2 at 19:12-19:13 and 33-3 at 19:12-13] Steger was knocked backwards and raised his right arm. [Record Nos. 33-2 at 19:12-19:13 and 33-3 at 19:12-13] However, it is unclear whether Steger struck Willis.

[Record Nos. 33-2 at 19:12-19:13 and 33-3 at 19:12-13] The gate became disconnected as Willis pushed it aside, rushed onto the porch, and brought Steger to the ground. [Record Nos. 33-2 at 19:12-19:13 and 33-3 at 19:12-13] The body-worn camera footage does not clearly show what occurred after Willis made physical contact with Steger.

Approximately 13 seconds after Willis pushed open the gate, the footage depicts Steger on his stomach with the defendants holding his arms behind his back. [Record No. 33-2 at 19:12:00-19:12:13] The officers then placed Steger in handcuffs and ultimately arrest him. [*Id.* at 19:12-19:13.] Following the interaction, Steger shouted, "You broke through the gate!" [*Id.*] And Willis responded, "You punched a cop in the face, so good f*cking job." [*Id.*] Steger then replied, "No, you hit me first! You hit me first asshole!" and, moments later, exclaimed, "You pushed through the gate and hit me first!" [*Id.*] Steger was transported to a local hospital following his arrest. [*Id.* at 19:50-20:06] During the drive, Steger complained to Willis that his handcuffs were too tight. [*Id.*] In response, Willis advised that he would loosen them once they arrived at the hospital. [*Id.*]

Steger was charged with disorderly conduct, menacing, theft of mislaid property, assault 3rd of a police officer, obstructing an emergency responder, and resisting arrest following the above events. [Record No. 33-1] A Kenton County Grand Jury indicted Steger for theft and assault. Subsequently, he was convicted of theft by unlawful taking. [Record No. 33-7]

Steger filed this action against Willis and Appleman in their individual capacities on June 3, 2024, asserting claims under 42 U.S.C. § 1983 for unlawful seizure and excessive force under the Fourth and Fourteenth Amendments, and state-law assault and battery. [Record No.

1] Following the filing of an Amended Complaint, Steger's remaining claims include excessive force under 42 U.S.C. § 1983 and state-law assault and battery.[1]  [Record No. 20]

## II.  Legal Standard

Entry of summary judgment is appropriate when the moving party demonstrates that there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  To meet that standard, a movant must demonstrate that the nonmoving party has failed to produce evidence to support an essential element of a claim.  *See Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted)).  Once the moving party has satisfied this burden, "the opposing party must set forth specific facts showing that there is a genuine issue for trial." *McLaughlin v. Fifth Third Bank, Inc.*, 772 F. App'x 300, 302 (6th Cir. 2019) (citing Fed. R. Civ. P. 56(e)).  In other words, the nonmoving party must present "significant probative evidence that establishes more than some metaphysical doubt as to the material facts." *Golden v. Mirabile Invest. Corp.*, 724 F. App'x 441, 445 (6th Cir. 2018) (citation and alteration omitted).

In reviewing a motion for summary judgment, the Court construes all facts and draws all reasonable inferences in a light most favorable to the nonmoving party.  *See Matsushita*

---

[1] The defendants note in their reply that "[t]hroughout his Response, Steger attempts to transform his excessive force claim into a broader Fourth Amendment challenge arguing that Defendants' entry onto his property was unlawful." [Record No 42 at 1] As the defendants correctly state, Steger did not assert this claim in his Amended Complaint, and it is well established that a plaintiff may not raise new legal theories at the summary judgment stage. *See Hazelwood v. Tenn. Dept. of Safety*, 322 F. App'x 441, 442 (6th Cir. 2009); *Tucker v. Union of Needletrades, Industrial & Textile Emps., et al.*, 407 F.3d 784 (6th Cir. 2005).  Therefore, the Court will not consider Steger's arguments regarding unlawful entry.

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The court may not weigh the evidence or make credibility determinations but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). However, when parties submit video footage of an incident, the Court must "view the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 378, 381(2007); *see also Rudlaff v. Gillispie*, 791 F.3d 638, 640 (6th Cir. 2015) (noting that in a case with two video tapes capturing the events in question, the court should consider the facts as shown in the videos and supplement them with the rest of the record, interpreted in the light most favorable to the plaintiff).

### III. Analysis

#### 1. 42 U.S.C. § 1983—Excessive Force

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. Courts apply an "objective reasonableness" standard when determining whether an officer's use of force in effecting an arrest violated the Fourth Amendment, considering the following three factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts ultimately ask in weighing these factors "whether the totality of the circumstances justifies a particular sort of seizure." *Id.* Moreover, the Sixth Circuit has recognized that the objective reasonableness standard contains a "built-in measure

of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

Analysis of Steger's Fourth Amendment claims are somewhat altered because Willis and Appleman assert that they are entitled to qualified immunity. This doctrine shields government officials performing discretionary functions from liability for civil damages unless the contours of the asserted right were sufficiently clear such that any reasonable officer would have understood that what he or she was doing violated that right. *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Murray v. Dep't of Corrs.*, 29 F. 4th 779, 786 (6th Cir. 2022).

While there need not be "a case directly on point" for the law to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks omitted)). Accordingly, a defendant is entitled to summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that a defendant violated a constitutional right, and the right was clearly established. *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

The Court may consider the two factors in either order, but "both must be answered in the affirmative for the plaintiff's claim to proceed." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Pearson*, 555 U.S. at 236). Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Courtright*

*v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).  While the Court construes the facts in favor of the plaintiff when considering whether a defendant's motion for summary judgment is appropriate, when a defendant raises a defense of qualified immunity, the plaintiff must show that the facts and inferences would allow a reasonable to juror to conclude that the defendant violated a clearly established constitutional right.  *See Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020).

### A.  Officer Steven Willis

**Excessive Force:** Steger argues that Willis' use of force—specifically pushing the gate into him, striking him, and forcing him to the ground—was objectively unreasonable.  [Record No. 38 at 6-10]  He support this claim by noting that the alleged crime was minor, he posed no immediate threat to the defendants or others, and he did not actively resist arrest.  [*Id.*]  Steger also emphasizes that he was arrested for disorderly conduct, which he contends is not a serious offense.  [*Id.* at 9.]  Further, he asserts that he was not a safety threat, he was on his own property, behind a gate, and he never brandished a weapon.  [*Id.*]  According to Steger, the only object he pulled from his pocket was his phone, which he used to record the encounter.  [*Id.*]  Steger also claims that he did not—and physically could not—resist arrest because he was dazed by Willis' punch.  [*Id.*]  Steger alleges that he did not punch Willis in the head but that his "hands came forward in a defensive position."  [*Id.*]

Willis offers a different account.  He maintains that his use of force was reasonable, arguing it followed Steger's verbal escalation and physical aggression.  [Record No. 33 at 8]  According to Willis, Steger raised his voice, cursed loudly, and struck a uniformed officer in the head during an attempted arrest.  [*Id.*]  Willis also claims that Steger posed an immediate safety risk because he "had a known history of carrying a firearm and a knife."  [*Id.*]  Willis

further contends that Steger actively resisted arrest. [*Id.*] He asserts that Steger "refused to identify himself, ignored repeated commands, and became increasingly agitated, cursing at officers and challenging their authority." [*Id.*] Based on this behavior, Willis decided to arrest Steger for disorderly conduct. [*Id.*] Willis maintains that Steger did not comply with the arrest and, instead, retaliated by striking him in the head while he attempted to detain Steger. *Id.* at 8-9. As such, Willis contends that "a brief, defensive response to a physical attack during an arrest falls well within the bounds of constitutional policing." *Id.* at 9.

Disputed issues of material fact preclude a finding of liability or qualified immunity on Steger's excessive force claim against Willis. Regarding the first *Graham* factor—the severity of the crime—Willis claims he arrested Steger for disorderly conduct, a charge that can involve violent conduct under Kentucky law. *See* KRS §§ 520.090, 525.060. *But see Saunders v. Cuyahoga Metro. Hous. Auth.*, 769 F. App'x 214, 220 (6th Cir. 2019) (finding that disorderly conduct charge "does not qualify as a serious crime" under *Graham*'s first factor). While the defendants assert that Willis used force only after Steger struck him, body-worn camera footage is such that a reasonable jury could find that Willis used force before the alleged assault. [Record Nos. 33-2 at 19:11-19:13 and 33-3 at 19:11-19:13] Moreover, the footage does not clearly confirm that Steger hit Willis. [*Id.*] In areas where the footage is ambiguous, Steger's version of events prevails in the context of a motion for summary judgment. *See Rudlaff,* 791 F.3d at 640. Steger asserts that Willis punched him and caused the gate to strike him as Willis forced it open and that the impact knocked Steger off his feet and into his front door. [Record No. 35 at 86-88] Steger further asserts that Willis punched him a second time, knocking him to the ground. [Record No. 35 at 86-88] A reasonable jury could find that

Steger's behavior did not involve sufficiently violent conduct to justify the level of force Willis allegedly used. Accordingly, the first *Graham* factor weighs in Steger's favor.

Regarding the second *Graham* factor—the threat posed by the suspect—a reasonable juror could find (based on the body-worn camera footage and Steger's account) that his words and actions on his front porch did not pose a threat to the defendants or the public. Although the body-worn camera footage shows that Steger became upset, raised his voice, and used profanity during his interaction with the defendants, he remained behind the gate throughout the encounter. [Record Nos. 33-2 at 19:07-19:13 and 33-3 at 19:07-19:13] He did not make verbal or physical threats and did not reach for his pockets after the defendants instructed him not to (this instruction came after he had already reached into his pocket to retrieve his phone). [Record Nos. 33-2 at 19:07-19:13 and 33-3 at 19:07-19:13] While the defendants contend they were informed by dispatch that Steger was known to carry weapons, he neither displayed a weapon nor threatened them with one at any point during the encounter. [Record Nos. 33-1 at 7, 33-2 at 19:07-19:13, and 33-3 at 19:07-19:13] Given these circumstances, a reasonable juror could conclude that Steger posed only a minimal safety risk. Accordingly, the second *Graham* factor weighs in Steger's favor.

The third *Graham* factor (whether the individual is actively resisting or attempting to evade arrest by flight) also weighs in Steger's favor. Both the body-worn camera footage and Steger's account indicate that he neither resist arrest nor attempted to flee. He did not ignore any commands to submit to arrest as no one informed him he was under arrest before or during the use of force. [Record Nos. 33-2 at 19:07-19:13 and 33-3 at 19:07-19:13] Willis entered through the gate without warning and made physical contact with Steger. [Record Nos. 33-2 at 19:07-19:13 and 33-3 at 19:07-19:13] Although there was some struggle to get Steger's

hands cuffed and to roll him onto his stomach, this activity occurred *after* Willis had already used force.  [Record No. 33-2 at 19:12-19:14]

Based on the video evidence and Steger's account of the interaction, a reasonable jury could conclude that Willis' use of force was objectively unreasonable and constituted a violation of Steger's Fourth Amendment right to be free from excessive force.

**Qualified Immunity:** Based on the foregoing analysis, the question turns to whether the right was clearly established.  Viewed in the light most favorable to Steger, the Court answers it in the affirmative.  Steger cites *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009), holding that when a suspect does not actively resist arrest or has stopped resisting arrest, force will generally be unreasonable.  He also relies on a number of other cases in support of his argument, including:  *Freeman v. Spoljaric*, 667 F. Supp. 3d 636, 653–54 (S.D. Ohio 2023) (concluding that the plaintiff had plausibly alleged that the officer used excessive force in deploying pepper spray because plaintiff had not made any sudden movements and had his arms raised into the air); *Atkins v. Township of Flint*, 94 F. App'x 342, 349 (6th Cir. 2004) (finding the use of pepper spray unreasonable where plaintiff "was not told that he was under arrest, ... did not start the physical altercation, and ... there was no reason not to tell him he was under arrest"); *Goodwin v. City of Painesville*, 781 F.3d 314, 326 (6th Cir. 2015); and *Shumate v. City of Adrian*, 44 F.4th 427, 446 (6th Cir. 2022) ("Not every profane uttering or rude gesture by a free citizen, even if it may seem unnecessary to a police officer, justifies using force on an otherwise non-threatening individual.")

While the use of force in the cases Steger cited are not identical, they do, to varying degrees, share notable similarities to the facts of this case.  These similarities would make it sufficiently clear to a reasonable officer that using force in such situations would violate a

clearly established right. In each instance, as in the case at hand, the suspects did not resist arrest prior to the use of force, were not informed they were under arrest, and did not initiate any physical confrontation. When this incident occurred, "the right to be free from physical force when one is not actively resisting the police was clearly established" *Shumate v. City of Adrian*, 44 F.4th 427, 450 (6th Cir. 2022) (citing *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010); *Griffith v. Coburn*, 473 F.3d 650, 659-60 (6th Cir. 2007)). And "[t]he general consensus among our cases is that officers cannot use force . . . on a detainee who . . . is not told he is under arrest, or is not resisting arrest." *Grawey*, 567 F.3d at 314.

Viewing the evidence in the light most favorable to Steger, a reasonable jury could find that Willis violated Steger's clearly established Fourth Amendment right to be free from excessive force when he forced open the gate, knocked Steger backward, punched him, and took him to the ground.

### B. Officer Mandie Appleman

**Excessive Force:** Steger offers no evidence that Appleman applied any of the force alleged. In fact, he concedes that Appleman did not strike, punch, or kick him, and Appleman did not attempt to take him to the ground. [Record No. 35 at 90:25-91:8] Steger does, however, raise new arguments for the first time in his response. First, he makes a cursory argument that Appleman used excessive force by failing to loosen his handcuffs; however, he offers no evidence to support this claim.[2] [Recorded No. 38 at 17] He further claims that Appleman

---

[2] For an excessive handcuffing claim to survive summary judgment, a plaintiff must point to evidence that (1) he or she complained the handcuffs were too tight; (2) the officer ignored the complaint; and (3) he or she experienced "some physical injury" resulting from the handcuffing. *Strickland v. City of Detroit*, 995 F.3d 495, 508 (6th Cir. 2021)(citing *Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009)). Steger has not pointed to any evidence in the record that he experienced a physical injury from his handcuffs being too tight.

"actively participated in his arrest and failed to protect [him] from Officer Willis' use of force." [*Id.* at 16] Thus, Steger now argues that Appleman violated his Fourth and Fourteenth Amendment by failing to intervene in Willis' use of excessive force. However, Steger's Amended Complaint only asserted a general excessive force claim. [*See* Record No. 20.] While Steger did not expressly assert a failure-to-intervene claim in his Amended Complaint, any such claim is without merit.

"[A] police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (citation omitted). An officer has a duty to intervene when "the underlying episode of excessive force has spanned a sufficient period of time for a nearby defendant to both perceive what was happening and intercede to stop it." *Id.* (citing *Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996) (denying summary judgment for defendant who watched a beating unfold from her nurse's station for "approximately ten minutes"). In contrast, no duty to intervene exists where "an entire incident unfolds 'in a matter of seconds.'" *Ontha v. Rutherford Cnty.*, 222 F. App'x 498, 506 (6th Cir. 2007) (collecting cases); *see also Alexander v. Carter*, 733 F. App'x 256, 265 (6th Cir. 2018) ("[A]n excessive use of force lasting ten seconds or less does not give a defendant enough time to perceive the incident and intervene to stop such force.")

---

[See Record No. 38.] Additionally, Willis' body-worn camera footage indicates that his handcuffs were loosened at the hospital following the arrest. [Record No. 33-2 at 20:05-20:06] Therefore, an excessive force claim for Appleman's alleged failure to loosen Steger's handcuffs does not survive summary judgment.

- 12 -

The alleged use of force by Willis occurred in less than approximately 13 seconds. [Record Nos 33-2 at 19:12-19:13 and 33-3 at 19:12-19:13] Appleman's body-worn camera footage confirms that she stepped onto the porch only after Steger had already been taken to the ground. [Record No 33-3 at 19:12-19:13] Her involvement was limited to assisting in handcuffing him. [*Id.*] As a result, Appleman did not have the opportunity to prevent the alleged excessive force and therefore she cannot be held liable under a failure-to-intervene theory.

**Qualified Immunity:** Even assuming she had such an opportunity, Appleman is entitled to qualified immunity. To overcome this defense, Steger must demonstrate that Appleman violated a clearly established constitutional right. *Martin*, 712 F.3d at 957 (citing *Pearson*, 555 U.S. at 232). He cannot do so here. There is no evidence that Appleman used any force against Steger, and she did not make physical contact with him until after he was on the ground, at which point she only assisted in placing handcuffs on him [Record No 33-3 at 19:12-19:13; Record No. 35 at 90:25-91:19] Nor does Steger even allege that Appleman used force against him. [Record No. 38] Because Appleman did not use force, she cannot be liable for excessive force under the Fourth Amendment. Likewise, she cannot be held liable for failing to intervene because the rapid progression of events did not allow her a realistic opportunity to do so.

### 2. State Law Assault and Battery Claims

Kentucky law defines battery as "any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him." *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000) (citation omitted). The Sixth Circuit has recognized that the "use of excessive force by a police officer constitutes the intentional tort of battery." *Browning v.*

*Edmonson Cnty.*, 18 F.4th 516, 531 (6th Cir. 2021) (citing *Ali v. City of Louisville*, No. 3:03-CV-427-R, 2006 WL 2663018, at *8 (W.D. Ky. Sept. 15, 2006)). Under Kentucky law, "[a]ssault is a tort which merely requires the threat of unwanted touching of the victim." *Andrew v. Begley*, 203 S.W.3d 165, 171 (Ky. App. 2006) (quoting *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. App. 2001)).

However, officials are shielded from liability under the state law defense of qualified official immunity if they performed a "(1) discretionary act or function . . . ; (2) in good faith; and (3) within the scope of [their] authority." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). A finding of "bad faith" can be "predicated on a violation of constitutional, statutory, or other clearly established right, . . . *i.e.*, objective unreasonableness; or if the officer . . . willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Id.* at 523. The first and third prongs of this standard are not in dispute, as "[t]he determination of the amount of force required to effect is a discretionary act and [is] within the scope of [an officer's] authority." *Nichols v. Bourbon Cnty. Sheriff's Dept.*, 26 F. Supp. 3d 634, 642 (E.D. Ky. 2014); *see also Smith v. Norton Hosps., Inc.*, 488 S.W.3d 23, 31 (Ky. Ct. App. 2016). Accordingly, the viability of the defendants' qualified official immunity defense depends on whether Steger can "establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523. This analysis closely parallels that of the Steger's corresponding federal law claims.

### A.  Officer Steven Willis

Steger asserts that Willis committed assault and battery under Kentucky law when he "intentionally, maliciously, and in bad faith applied and/or threatened to apply unlawful and unnecessary force against Melvin Steger." [Record No. 20 at ¶ 54] Steger argues that Willis

is not entitled to qualified immunity under Kentucky law because Willis' conduct violated his clearly established constitutional right to be free from excessive force. [Record No. 38 at 19 (citing *Yanero,* 65 S.W.3d at 522)] Conversely, Willis maintains that he did not use excessive force against Steger and that he is entitled to qualified official immunity because "there is no proof in the record that either of the Officers engaged in any willful, malicious, or intentionally harmful conduct" and because "there is no proof that they violated Steger's clearly established constitutional rights." [Record No. 33 at 16]

As explained above, a genuine issue of material fact exists regarding whether Willis used excessive force. Accordingly, defendants' motion for summary judgment is not appropriate regarding Steger's claim for assault and battery against Willis. Willis is not entitled to qualified official immunity with respect to the state assault and battery claim because genuine disputes of material fact exist concerning whether he violated clearly established law by his use of force. *See Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) ("R]esolution of the state-law immunity issue is heavily dependent on the same disputed material facts as the excessive-force determination under § 1983.").

### B. Officer Mandie Appleman

Steger claims that Appleman committed assault and battery under Kentucky law when she "intentionally, maliciously, and in bad faith applied and/or threatened to apply unlawful and unnecessary force against Melvin Steger." [Record No. 20 at ¶ 54] This claim fails because both the body-worn camera footage and Steger's own account of the incident demonstrate that Appleman never unlawfully touched Steger. *See Vitale*, 24 S.W.3d at 657. Appleman does not make physical contact with Steger until after he is on the ground, and even then, her involvement is limited to assisting with placing him in handcuffs. Additionally, the footage

and Steger's version of events do not support any claim that she threatened to use unlawful or unnecessary force.

Finally, even assuming the assault and battery claims against Appleman were viable, she would be entitled to official qualified immunity. Steger has not offered any viable evidence that Appleman acted in bad faith and her conduct did not violate any of his clearly established rights. Further, there is no evidence that she acted willfully, maliciously, or with a corrupt motive.

## IV. Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that the defendants' motion for summary judgment [Record No.33] is **GRANTED**, in part, and **DENIED,** in part, consistent with this Memorandum Opinion and Order. All claims asserted against Defendant Mandie Appleman are **DISMISSED** with prejudice and she is **DISMISSED** as a defendant to this action.

Dated: September 30, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky